**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**MICHAEL BERTHER,**

        **Plaintiff,**

  v.                                Case No. 06-C-293

**TSYS TOTAL DEBT MANAGEMENT INC.,**

        **Defendant.**

## ORDER

On March 9, 2006, Michael Berther ("Berther") filed a complaint alleging that the defendant, TSYS Total Debt Management, Inc. ("TDM"), violated the Fair Debt Collection Practices Act ("FDCPA") by not stating the name of the creditor to whom a debt is owed, as is required by 15 U.S.C. § 1692g(a)(2). Specifically, TDM identified the creditor as "Capital One," but Berther alleges that there is no such creditor as "Capital One" but rather there are numerous companies that have similar names such as "Capital One Financial Corporation," "Capital One Bank," "Capital One F.S.B," "Capital One Services, Inc." and "Capital One Auto Finance, Inc."

This case was reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge, and on July 6, 2006, this court denied the defendant's motion to dismiss. On June 6, 2007, the parties filed a joint motion for settlement and for preliminary approval of a class action settlement. On June 18, 2007, the court held a conference with counsel for the parties to discuss whether class certification is appropriate in this case and, if so, whether the proposed settlement is fair.

For the purposes of settlement, the parties propose the following class: "all natural persons in the State of Wisconsin who were sent a collection letter by Defendant, TSYS Total Debt Management, Inc., asserting a debt owed to 'Capital One,' seeking to collect a debt for personal, family or household

purposes, between March 9, 2005 and March 9, 2006, that was not returned by the Postal Service." (Docket No. 27 at 2.) The defendant estimates that the class would consist of approximately 6,588 persons. (Docket No. 27 at 2.)

The defendant has proposed to pay $1,000 to the individual plaintiff, $10 to each class member, and $12,500 in attorney's fees and costs. (Docket No. 27 at 4-5.) The costs of providing notice and administering the class shall be paid by the defendant. (Docket No. 27 at 5.)

A class action is appropriate only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, one of the three subsections of Federal Rule of Civil Procedure 23(b) must be satisfied. In the present action, the parties allege that Rule 23(b)(3) is applicable, specifically that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Turning first to the question of whether the requirements of Rule 23(b)(3) are satisfied in this case, this court recently certified a class action in another FDCPA case. See Seeger v. Plaza Associates, 05-C-944 (E.D. Wis., March 29, 2007). The same law firms that represent the present plaintiff and defendant represent the plaintiffs and defendant in that action. In Seeger, the defendant argued against class certification on the basis that class litigation was not superior to individual litigation because the FDCPA limited the potential pro rata recovery of statutory damages for each class member to about $21 each. (See 05-C-944, E.D. Wis., Docket No. 30-5 at 5.) The court held that although paltry, a potential recovery of $21 was not de minimus so as to form a basis to reject certification of the class, in part because $21 represented a minimum recovery if every potential class member submitted a claim.

Thus, the court noted that a potential recovery of $21 was extremely unlikely. Since the plaintiffs estimated that only ten to fifteen percent of potential class members would participate by submitting claims, the pro rata division of the maximum statutory damages would likely be between $143 to $214 per class member. (See 05-C-944, E.D. Wis., Docket No. 33 at 7.)

In the present action, the court is urged to accept a settlement that would entitle each class member to a maximum of $10. In other words, no monetary pool for damages will be established, a pool that would then be divided equally among each participating class member so that each participating class member might receive substantially more than $10. Within the context of this case, is $10 per class member de minimus?

The court finds some validity to the argument that a settlement of any amount will be appreciated by class members because it is an amount the class member would not otherwise receive, either because they were unaware they had a claim or were unwilling to personally bear to burden of litigation. The Seventh Circuit cautioned that courts should carefully consider reasons such as these before refusing to certify a class action as de minimus. Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997).

Any litigation is burdensome for a plaintiff, and a plaintiff may be substantially less-willing to undertake these burdens when the maximum potential recovery is only $1,000. However, despite the limited recoveries, this district has nonetheless been inundated with cases wherein plaintiffs are willing to assert violations of the FDCPA. This is likely because the burdens upon the plaintiffs in FDCPA cases are ordinarily minimal. Quite frequently, the plaintiffs are mere figureheads while the driving force behind these cases are the attorneys and their quest for attorney's fees. Sanders v. Jackson, 209 F.3d 998, 1003-04 (7th Cir. 2000) (citing Mace, 109 F.3d at 344; Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 58 (2d Cir. 2000).

In passing the FDCPA, Congress recognized that it might be extraordinarily difficult for injured parties to find representation given that damages were capped at $1,000, thus making it unlikely that an attorney would take the case under the traditional contingency fee arrangement where the attorney recovers a portion of the award. Congress further recognized that victims of abusive debt collection practices would be unlikely to privately bear the costs of litigation, again given the $1,000 damage cap. Thus, Congress established that a prevailing plaintiff shall recover his or her attorney's fees and costs from the defendant. 15 U.S.C. § 1692k(a)(3). This provision for attorney's fees has turned FDCPA cases into a profitable vein of litigation upon which entire firms focus their practice, provided, of course, the firms can keep finding plaintiffs.

Therefore, although a plaintiff's maximum potential recovery of $1,000 may seem insignificant to some, given that an ordinary plaintiff's involvement, effort, and risk has proven minimal in this type of litigation, the court finds no reason to conclude that a maximum of $1,000 would be insufficient to motivate an individual plaintiff to pursue private litigation. In this regard, individual litigation may be superior to class litigation, especially where the maximum class recovery is $10.

In addition, the minimal recovery raises the concern that it may operate as a disincentive to class members to submit a claim. The court has substantial concern as to whether for $10, the average class member would take the necessary steps to submit a claim. Would that person just say, "why bother?" The parties have submitted a three-page proposed notice of class action settlement. (Docket No. 27-4.) In order to receive his or her $10, a class member must read through this notice and then fill out and mail a claim form. Although it seems like a simple enough procedure, any notice of class action settlement is not light reading for most people. It necessarily includes legal phrases and discussions of legal rights and remedies that would be intimidating, or at least confusing for many people. When faced with an intimidating or confusing notice, many class members will never read far enough to learn how much they stand to gain by submitting a claim and among those who do learn how much they stand to

recover, will choose not to go through the effort of submitting a claim when they recognize that it is only $10. During the in-court conference held to discuss the proposed settlement, the parties were in agreement that a ten to fifteen percent return rate is normal, but return rates have been as high as twenty-five percent in other cases. If a ten to fifteen percent return rate is normal, then surely the return rate would be towards the low end of that range when the benefit is only $10.

Thus, in light of the fact that the effort on the part of an ordinary plaintiff in pursing a claim would be minimal in comparison to the potential payoff, a class certification is not necessary to provide attorneys a sufficient incentive to accept such a case. Further, the $10 that each class member would receive under this settlement is an insufficient amount to motivate many class members to undertake the necessary effort to submit a claim. Therefore, the court has substantial reservations as to whether a class action is superior to individual claims and whether the requirements of Rule 23(b)(3) are satisfied.

Notwithstanding the foregoing reservations, the court is unable to conclude that the proposed $10 recovery is de minimus. This is because, from the defendant's perspective, $10 represents a reasonable estimate of the statutory damages that would be awarded for the violation that allegedly occurred should this matter proceed to trial and a violation of the FDCPA be found. The defendant's failure to fully state the name of the creditor and instead simply state that the debtor owed money to "Capital One," if a violation at all, was a minor one. Thus, the court does not regard the relatively token sum of $10 to be an unreasonable estimate of a likely award should a violation be found. Furthermore, a class settlement provides the defendant with certainty and allows it to avoid the costs of multiple litigation.

The prior discussion of the minimal recovery involved in the proposed settlement does not apply to the named plaintiff who stands to recover $1,000, the maximum allowed. Therefore, from the plaintiff's standpoint, the proposed settlement equals the maximum amount that would be received in

- 5 -
Case 2:06-cv-00293-AEG   Filed 06/19/07   Page 5 of 8   Document 30

an individual action. Even though the court's comments regarding the reasonableness of statutory damages for class members applies with equal weight to the plaintiff, the court recognizes that there is likely a different rationale behind the proposed settlement as to the named plaintiff.

For the most part, FDCPA cases appear to be much more about attorneys fees than the prosecution of consumer rights. For example, cases which present minimal violations engendering nominal statutory damages are able to be litigated because of the recovery of attorney fees. Conversely, it is the avoidance of attorneys fees that undoubtedly serves as the primary motivating factor in pushing defendants into settlements. So often, these cases are simply more cost effective to settle, even if the merit of such a case is debatable. This case is an appropriate example. The parties estimate that perhaps ten percent, or roughly 659 of the class members will submit claims. Thus, the defendants shall pay $1,000 to the plaintiff, $6,590 to the class members, and $12,500 in attorneys' fees and costs. The plaintiff's attorneys are likely to receive nearly double that paid to the entire class. Every additional step in the litigation increases that figure for attorneys' fees. Only if the a trial were to result in a finding that no FDCPA violation occurred would the defendant not have to pay the plaintiff's attorneys' fees. However, such a victory would be hollow given that it would require substantial expense in the form of its own attorneys' fees, likely in an amount substantially greater than that of this proposed settlement. Thus, the plaintiffs in such cases are in a highly advantageous position because prompt class action settlements are much more cost effective than prolonged litigation.

Nonetheless, even though the foregoing dynamic concerns the court, it does not constitute reason to reject the proposed settlement. Although the plaintiff is receiving a maximum recovery, while the class members whom he represents are receiving perhaps as little as five percent of the amount they would recover if the class were to prevail at trial, the court does not find that this disparity creates an actual conflict of interest so as to render the plaintiff an inappropriate class representative. The court

is presented with no other reason to question the qualifications of the plaintiff to act as a class representative.

Further, the parties agree, and the court is satisfied, that the putative class is sufficient in number, that there are common questions of law and fact to the class, and the claim of the named plaintiff is sufficiently representative of the claims of the class members. Thus, the court concludes that the requirements of Rule 23(a) are satisfied.

Finally, the court is not presented with a sufficient reason to question the appropriateness for Robert K. O'Reilly, Corey Mather, and the law firm of Ademi & O'Reilly, LLP to act as class counsel. They are experienced attorneys in this type of litigation.

**IT IS THEREFORE ORDERED**:

1. The Court finds that the proposed Settlement and Release, the terms of which are fully set forth in the agreement, is fair and reasonable and grants preliminary approval to it.

2. For the purposes of settlement, the parties stipulate to the certification of the class defined as follows: all natural persons in the State of Wisconsin who were sent a collection letter by Defendant, TSYS Total Debt Management, Inc., asserting a debt owed to "Capital One," seeking to collect a debt for personal, family or household purposes, on or after a date one year prior to the filing of this action, that was not returned by Postal Service. Based on its records, Defendant estimates that the class described above includes approximately 6,588 persons. Michael Berther is appointed as Class Representative and Robert K. O'Reilly, Corey Mather, and Ademi & O'Reilly, LLP are appointed as class counsel.

**IT IS FURTHER ORDERED** that counsel for the plaintiff shall submit to the court within 3 days of this order an electronic copy of the previously filed proposed class notice in either Word of WordPerfect format to the court's email address, GoodsteinPO@wied.uscourts.gov. The court shall

then review the proposed class notice, provide notice to the parties of the changes it believes necessary, and provide the parties with the opportunity to object to the court's proposed changes.

Dated at Milwaukee, Wisconsin, this 19th day of June, 2007.

BY THE COURT:

s/Aaron E. Goodstein
AARON E. GOODSTEIN
U.S. Magistrate Judge